IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

FILED
2017 OCT 10 P 1: 29
U.S. DISTRICT COURT
EASTERN DIST. TN

| | |
|---|---|
| Shane Bruce | ) |
| v. | ) Civil Action #: 3:17-CV-285 |
| Great Britain | ) Mattice/Shirley |
| BP plc [British Petroleum] & subsidiaries | ) |
| Sir John Sawers | ) |
| America Medical Association | ) |
| American Association of Poison Control Center | ) |
| Center of Disease Control, | ) |
| National Institute of Health | ) |
| Office of Secretary of Defense, James Mattis | ) |
| The University of Tennessee Medical Center | ) |
| Gregory A. Finch P.A. | ) |
| University Infectious Disease | ) |
| Stephen Teague M.D. | ) |
| UT Family Physicians LaFollette | ) |
| Lori P. Staudenmaier M.D. | ) |
| Christian Terzian, M.D. | ) |
| Tennova LaFollette Medical Center Clinic | ) |
| Jeffry Nitz, | ) |
| Lafollette Medical Center Tennova Healthcare | ) |
| Tennova Cardiology, et al | ) |

### Amended Complaint for Restitution to Plaintiff from Tortious Conduct & Inference, Breached Contracts, Negligence & Malpractice by Civil Rights Violations

This Plaintiff, Shane Maddox Bruce to modify action against Jeffry Nitz 919 E Central Ave Ste 102 LaFollette, TN 37766; Stephen Teague 919 E. Central Ave. Ste 102 LaFollette TN 37766; Thereby Tennova Cardiology 919 E. Central Ave. Ste 102 LaFollette TN 37766; Thereby Lafollette Medical Center Tennova Healthcare; Christian Terzian M.D. 905 E Central Ave, LaFollette TN 37766; Thereby Tennova LaFollette Medical Center Clinic M.D. 905 E Central Ave, LaFollette TN 37766; UT Family Physicians LaFollette Lori P. Staudenmaier M.D. 109 Independence Ln, Ste. 300 LaFollette, TN 37766; thereby UT Family Physicians, Gregory A. Finch The University of Tennessee Medical Center 1924 Alcoa Highway, Knoxville, Tennessee 37920; Thereby The University of Tennessee Medical Center; University Infectious Disease Mark Rasnake M.D. 1924 Alcoa Hwy, Knoxville, TN 37920; American Medical Association James L. Madara, M.D. AMA Plaza 330 N. Wabash Ave # 39300 Chicago, IL 60611; American Association of Poison Control Center Stephen T. Kaminski, M.D. 515 King St., Suite 510 Alexandria, Va. 22314; National Institute of Health Francis S. Collins, M.D., Ph.D. 9000 Rockville Pike Bethesda, Maryland 20892; Center of Disease Control Anne Schuchat (or director), MD 1600 Clifton Road, Atlanta, GA 30329 USA; Secretary of Defense James Mattis 1000 Defense Pentagon Washington, DC 20301-1000; BP plc Sir John Sawers 1 St James's Square London, SW1Y 4PD; BP plc Mr. Michael Thomas 501 Westlake Park Boulevard Houston TX, 77079-2696; Thereby B.P. plc; Queen Elizabeth II of Great Britain Elizabeth Alexandra Mary Buckingham Palace London SW1A 1AA Thereby Great Britain

This Plaintiff now amends my complaint to this Court, complaint is now as follows:
1. I Plaintiff, Shane Maddox Bruce, is a citizen of the United States and former officer of service brings this Civil Action against the Defendants for compensatory and punitive damages pursuant to 42 U.S. Code § 1395dd as a civil rights violation leading to his personal injuries

1

from long neglect due to 'patient dumping' of the collective medical community of victims from the BP actions in the Gulf of Mexico. Appropriate treatments, guaranteed and enforceable by Social Security Act and also within the offices of U.S. Department of Health and Human Services Inspector General and Office for Civil Rights by several each and every laws including Emergency Medical Treatment and Labor Act ,Hill-Burton Act, federal civil rights laws: the Rehabilitation Act of 1973, the Americans with Disabilities Act; treatments which are presently denied by requiring an insolvent series of references by PCP medical doctors and specialists and self and government appointed agencies who have all displayed lack of medical competence/negligence/malpractice at the level of treatment/diagnoses in such the areas as to be malpractice despite patients indicating knowledge specific ailments and causes and a veritable encyclopedic online knowledge base compiled by victims of same as well as concerned citizens. This complaint brought by Tort Law, 18 U.S.C. § 2333(a) [civil remedies for terror victims] and 28 U.S.C. 1331 the Plaintiff requests this Court fully exercise its Jurisdiction as founded upon 28 U.S.C. 1331 in matters of variety, Article III, Section 2 (maritime), Act, 46 U.S.C. § 30101, 50Chp3§23 and whatever laws may apply including taking exceptions of 28 U.S.C. § 1605(a)(2) and 28 U.S.C. § 1603(a). Plaintiff, for his complaint, makes the following allegations:

2. That BP plc using a genetically modified microbe, most probably modified from the microbe Oleispira Antarctica one of four 'petroleum microbes' that have been manically modified to survive beyond its natural frozen habitat where it has an important place in nature was essentially weaponized to effect any climates and oceans and its introduction into oil wells. It purported use is to increase pressure and decrease viscosity of oil as well as pull apart or in the oil industry language 'degrade' non-organic compounds as it does in Antarctica.

3. The effect however in populated coast lines and the oceans themselves is all the oil is used to culture the microbe which if released then can not only infect most organisms but can be used a vector of genetic modification in any and all organisms it might infect. Its further suggested use by UK scientists is to effect retroactive genetic changes in that it will transform DNA it comes in contact with any given 'genetic mobile element' that is so imposed upon it.

4. By introducing my own original deduction and induction by virtue of my expertise in the sciences, forensic and logical constructs, establishing causal factors and supplanting other theories or current UK explanations to the origins of the introduction to the estimated tons of heavy metals directly attributable to the BP plc oil well explosion and subsequent actions by the same defendant, that in that same microbe used as a pressure fuse to the explosion also is a formative organism capable creating proteins from inorganic matter to create life and in its natural function create life enabling compounds and environments, is able to 'mine' metals and other substances for such a purpose of its natural design. That in its genetic modification and introduction into oil wells, the dumping of in excess of a million tons of fully cultured bacteria in the oil, that these microbes then microscopically churned the oceans sediments as it mined minerals and other elements casting off many tons of dangerous elemental toxins of heavy metals including that of Manganese and Arsenic directly into the water and thereby air. This process is likely to continue indefinitely.

5. That the free-radical, or otherwise reactive elements including those of heavy metals freed by the processes of such a microbe as cultured by BP plc in their oil wells introduced into the ambient environment which would have otherwise been bound by settlement or life processes where then abundantly absorbed into all lifeform which were exposed to it, including this plaintiff and hundreds of thousands of people, but oddly only been widely noted in marine life the tissue/hair sampling required to identify concentrations is oddly widely ignored by 'mainstream' (a.k.a. AMA or otherwise nationally administered) medicine, which had effectively hidden the causes from wide-spread knowledge and media, one guesses in some subterfuge attempts to hide the wrongful acts of BP plc by whatever and varied motives have been further wrongfully applied in attempts of obfuscations.

6. The liberation and consequential exposure of heavy metals that are usually only attributed to context to weapons of war is ongoing, as this plaintiff wasn't exposed until 2011, more than a year after the infected oil had been made to precipitate to the bottom of the ocean where those very heavy metals had settled by use of BP plc Corexit, compounding wrongdoing upon

wrongdoing in cataclysmic proportions that could only been done by a very unbalanced and dangerous mind(s), a wrongdoing that started with the thought of genetic manipulation.
7. That such manipulation the microbe resulting in its presence in populated and life-dense areas and results of the sought capabilities of it being able to liberate and breakdown component elements such as heavy metal toxins from their organic and inorganic bindings which can be recreated by experiment, craft and design, therefore predictable and indistinguishable in its occurrence from a planned attack of maliciousness or further criminal action that of intentional tort in addition to the BP admitted criminal negligence which has been shown as a reoccurring mindset of those that would introduce something as unnatural and contrived against and not supported even the most basic principles of ethics.
8. In the capacity that would be a wrongful act equal to that and surpassing most war crimes, introduced the genetically altered microbe into the worlds' oceans, now any oil catastrophe now becomes a weaponized mass destruction of toxic elements, any that might be in the area, where the same microbes cultured in the BP oil well having spread, will grow altering whatever oceans or waters and subsequently rains with heavy metal poisons that would otherwise be undisturbed,
9. **That by this and/or other means BP plc introduced tons of heavy metals toxins in the amounts as to change the chemistry of the Gulf of Mexico and coastlines** many miles inland and present a long-term hazard of infamous and historic portions which will have to be addressed some decades, if not centuries to come having become quickly incorporated as is the nature of heavy metal toxins into the life streams **causing harm to all who live or visit there, intentional tort in statues broken and BP plc admitted criminal negligence.**
10. Also, that now omnipresent microbe which has spread across all the Earth will plume on contact with any hydrocarbon, namely the oceans of oil under the continents and oceans, comes in contact any other genetically modified organisms carrying the 'genetic mobile elements' [GME] no matter what thoughtless use was thought to warrant any change would will carry those inappropriate 'mobile genetic elements' to cross species an always present man-made threat to life and environment, that microbe which once was extremely beneficial to both in its limited home of the frozen Antarctic which such a microbe is necessary in such intelligence design of nature to reclaim otherwise unreclaimable resources for life, now modified by man is one of the worlds' greatest threats. Referencing several scientific journals which have published *"Genome sequence and functional genomic analysis of the oil-degrading bacterium Oleispira Antarctica" (and discussion)* by authors Michael Kube, Tatyana N. Chernikova, Yamal Al-Ramahi, Ana Beloqui, Nieves Lopez-Cortez, María-Eugenia Guazzaroni, Hermann J. Heipieper, Sven Klages, Oleg R. Kotsyurbenko, Ines Langer, Taras Y. Nechitaylo, Heinrich Lünsdorf, Marisol Fernández, Silvia Juárez, Sergio Ciordia, Alexander Singer, Olga Kagan, Olga Egorova, Pierre Alain Petit, Peter Stogios, Youngchang Kim, Anatoli Tchigvintsev, Robert Flick, Renata Denaro, Maria Genovese, Juan P. Albar, Oleg N. Reva, Montserrat Martínez-Gomariz, Hai Tran, Manuel Ferrer, Alexei Savchenko, Alexander F. Yakunin, Michail M. Yakimov, Olga V. Golyshina, Richard Reinhardt, and Peter N. Golyshina which confirmed this plaintiffs suspicions as causal medical factors to a complex condition.
11. That Great Britain and BP plc [British Petroleum public limited company is global parent company of the worldwide business operating under the "BP" logo; including BP America whose made claims to be the single largest investor in U.S. energy.] past and actions as of date of this complaint in attempts of covering their actions and conditions during and after the BP Deepwater Horizon explosion. Their effective attack affected the entirety of the Space Corridor in their diseased machinations and results in worldwide genetic consequences. The genetically modified microbial fuse that caused the explosion and subsequent use and introduction of chemical toxins of mass destruction and/or other means, then attempts to obfuscate their machinations, whether by legal, illegal, having control of those commercial interests acting as their agent or being an organ of such a country, or whatever and various which would include acts of war or intrigue as a foreign country of a war crimes upon the U.S. infrastructures or equally being that of criminally negligent in industry created a **tortious inference** in medical administration, dissemination about the conditions caused by the event and thwarted medical information how to care for the people of the U.S. of which plaintiff is a

member of. By so interfering as a third party, the tortfeasors, British Petroleum and Great Britain, thereby committed **tortious inducement of breach of contract** between the other defendants and their express and tacit responsibilities as well as several implied and express contracts, and beneficial business towards the people of the United States and thereby of the plaintiff.

12. That British Petroleum is corporation agent and organ of Great Britain even after privatized in 1987 is well known and documented, that British Petroleum has ties to British secret intelligence, cold war and espionage services is easily shown and is obvious as Sir John Sawers, head of UK's Secret Intelligence Services MI6 was appointed to British Petroleum board serving it and by it GB as its Chair member of BP as safety, ethics and environmental assurance, exactly where cold war is to be suspected, individual person of defendant of interest and demonstrable knowledge of intrigue on the level of the tortfeasors at the nation of the United States. BP's shares and board are controlled by those in service of Great Britain, thereby owned by Great Britain and 10% of Great Britain pension economy; thus, limiting or negating sovereign immunity by taking exception pursuant 28 U.S.C. § 1603(a); 28 U.S.C. § 1605(a)(2); Magna Carta, Justice Against Sponsors of Terrorism Act and exceptions provided to the plaintiff by the Amended Foreign Sovereign Immunities Act.

13. That Great Britain and British Petroleum did release approximately 200,000,000 (Two Hundred Million) to 400,000,000 (Four Hundred Million) gallons of microbial cultured oil in the explosion caused by the microbial timed fuse. That genetically modified bacteria then caused a genetic contagion by 'mobile genetic elements' used in transforming the bacteria for use in higher temperatures then affected the plaintiff, an unwilling genetic transformation which was discovered this 2017. RST §435B (Scope of Liability), RST §46 (Outrageous conduct causing severe emotional distress, of what many including this plaintiff will call war crimes by like comparison to USC 50:32§1520(a) and RTT §1), RST §21 (the use of in excess of 1,000,000 lbs. (One million pounds) of arsenic plus infecting microbes is intentional harm) RTT:GP§12 (violations of EPA, statutes, generally accepted definitions of war crimes).

14. **Incorporating paragraphs 1 through 4**, in that this plaintiff has suffered chronic infection for 6 years both from weakened immune system from toxic poisoning and from a genetically modified bacteria BP used as a microbial fuse and 4 years of heavy metal poisonings including that of arsenic, arsenic which **Great Britain by British Petroleum** had introduced million gallons in the largest strike of what constitutes chemical weapons against the Gulf Coast and following that made several motions to hide some information by legal actions and by illegal actions further kept such information from being disseminated directly contributed to years of physical suffering and disability with forever altered plaintiffs DNA by the microbial infections bearing human-made mobile genomic elements and by Tort law held to the tort standards of repayment to the plaintiff of medical and financial damages, loss of income, disability and unwilling alteration to his genome. The alteration to plaintiffs' genome now, due to long neglect of adequate medical response, requires special environments and probably very long monitoring with conditions unseen far into the future. The plaintiff ask the courts to find for this plaintiff and order **British Petroleum and Great Britain, tortfeasors, to pay $250,000.00 (Two Hundred and Fifty Thousand Dollars) each** to this plaintiff **and Sir John Sawyers to pay $96,000 (Ninety Six Thousand Dollars)** to the plaintiff by RST§875, RTT:GP §12:.

15. Incorporating **paragraph 5**, that defendants the **American Association of Poison Control Center, American Medical Association [AMA], Center for Disease Control [CDC], National Institute of Health and Secretary of Defense who should be organizing them** *(while maintaining Federal Question should the U.S. wish to join the plaintiff against tortfeasors named as defendants in this suit, whether these defendants or others within the U.S. are also tortfeasors or worse traitors)* are **negligent, breach of implied and express contracts, and question of interference of contract** in their administrative and management of the medical industry/defense in the United States, in that if the conditions that affected thousands in the Gulf and pertinent, essential, and necessary medical information had been disseminated by that those controlled by the defendants that have so sought such control, even when unbalanced, controlled by foreign influence or at the behest of those external enemies which caused them so betray the nation and peoples and this plaintiff who've they've express

and implied contracts to serve as a beneficial business as, which contributed directly to years and decades to come of physical distress, illness and suffering by created an administrative lack of medical recourse for the victims of this incident or those of any with heavy metal poisoning by refusing access to such needed antidotes and treatments individually or as co-conspirators to violate Civil Rights, inalienable and otherwise. For which the plaintiff asks the court to require **$75,000 (Seventy-Five Thousand) from each** of these defendants to be paid to the plaintiff pursuant **RST§18 failure to warn, and as such warning is the primary if not only function of such groups, RST§323, RST§878 (concurrent and consecutive acts), RST§284 (negligence of duty)**

16. While incorporating the previous paragraph that several medical professionals, doctors, hospitals and clinics are and were so deficient in their medical diagnoses and treatments of the conditions of chronic infections, chronic hypothermia, heavy metal poisonings and overdoes all of which are medical emergencies in being extremely painful, threatening to life, and likely to cause harm to organs and health in present and future if untreated, despite that the plaintiff repeatedly and explicitly outlining the very same conditions to each and every one of the providers listed as to constitute medical neglect and violations of civil rights **(hypothermia, hypertension and extremely high blood pressure have the status of medical emergency, just one of the several symptoms/conditions caused from untreated carditis gmo infection and/or heavy metal poisoning).** That the cause of the condition is a continual and constant affect of medical emergency on this plaintiff wasn't once address in treatment, that this plaintiff remained without any sufficient treatment by any medical personnel as defined as controlled or managed by separate defendants. **Jeffry Nitz, Christian Terzian M.D., Stephan Teague M.D., Tennova Cardiology, Lafollette Medical Center Tennova Healthcare, Tennova LaFollette Medical Center Clinic, Lori P. Staudenmaier M.D., UT Family Physicians LaFollette, Gregory A. Finch, The University of Tennessee Medical Center, University Infectious Disease** have been added as examples of those that, while lacking some management, administration and control that they have not suitably demonstrated the sufficient initiative (RST§479 and RST§323) even at specific condition indicated by plaintiff, thereby negligent and medical malpractice not performing their duty of scientific inquiry beyond that of the conditioning and training pursuant RST§284.

17. Plaintiff did and does require intravenous chelation to alleviate accumulations of heavy metals in my pericardium and heart as oral chelation had no effect, even as oral chelation was attempted two weeks at a time, such medical provider defendants did deny such needed even emergency medical treatment in such a extreme pain and danger to life and damage to organs occur when the heavy metal elements accumulate in any area. Indeed, specific now only by prescription chelating agents are required severally and individually for each heavy metal toxin, a different chelation for each one of the heavy metal overdoses which have been noted as successful in treating patients (Reference successful chelation treatments even in chronic cases based on research such as *"Chelation Therapy of Manganese Intoxication with para-Aminosalicylic Acid (PAS) in Sprague-Dawley Rats"* by Wei Zheng, You-Ming Jang, Yanshu Zhang and Dallas Cowan.)which this Plaintiff is still in dire need of and without, being a state of constant medical emergency as legally defined (see Plaintiffs' Memorandum of Law Supporting Complaint) which is yet not treated, completely lacking treatment of such causal and continuing factors by the listed defendants.

18. Beyond that of conditions that are new and need researching by anyone's doctor of GMO infections, these listed defendants ignored even well documented and widely known problems caused by heavy metals, which have been known some CENTURIES. Listed defendants ignored professional research, stating his severe conditions 'just happened' even when this Plaintiff would printout and bring such scientific journals such as *"Cardiovascular Toxicities Upon Manganese Exposure"* by Yueming Jiang and Wei Zheng, which coinciding with the tissue labs showing that this plaintiff has manganese overdose somewhere in the range of forty-two times statistically lethal levels should be a clear causal factor in my continuing medical conditions, let alone the common knowledge documents such as MDSS material data safety sheets or OSHA warmings all of which any doctor should have been able to research independently as causal, but the listed defendants ignored such even when the research had been done by the plaintiff and scientific findings presented, yet they still professed ignorance,

taking weeks or months to 'find out about it' or dumping this plaintiff to yet another doctor/specialist where none showed any real competence, nor attempted to in any way, lacking even the effort to read printed journals brought to them in context, I've recordings of at least one listed defendant refusing to even consider causal factors saying "you would have a hard time finding anyone that would do that" concerning conditions that would affect the heart or cause high blood pressure in a cardiologists office!

19. Such is the professional decay among the medical industry as shown by these listed defendants, instead the listed defendants would say absurdities and absolute untruths, seemingly more interested in being argumentative towards patients and at least this plaintiff rather than displaying any real interest in any medical conditions, doing nothing more than some mindless repetitive diagnoses and prescribing software prescribed symptomatic pharmaceutical prescriptions than even considering actual medical diagnoses, something that would require no medical expertise at all in matching symptom to prescription and dismally short of anything expected of one educated in medicine, specialist or otherwise. Of course, these most immediate symptoms of hypertension, extreme pain to the point where this plaintiff couldn't move his limbs on occasion due to the pain overriding voluntary muscle action, mental distress, are only indicative of real medical issues that should be expected and forestalled and treated by any medical professional. It's been by this plaintiffs' individual effort and at great financial cost that I'm able to function despite the defendant doctors' bad and completely inappropriate advice. One has the impression each doctor has a daily routine of prescribing the same inappropriate diagnoses and treatment with never actually diagnosing any of their patients.
20. Lacking actual treatment his plaintiff has had to resort to such methods as staying overweight to dilute the heavy metal toxin concentrations and alternative medicine or OTC Chelation, or heat therapy building saunas which reduces my bouts of blood pressure for some yet fully understood reason, extreme blood pressure caused by low or moderate temperatures besides excitement, pain, or physical exertion.
21. The only so-called treatment by listed defendants which all concentrated on a symptom of high-blood pressure was even completely non-responsive to the prescription each one of them prescribed, which they would prescribe even though informed that it had no effect, their negligence completely useless and described by one Emergency Room Doctor at Tennova Medical Center of LaFollette that despite the defendants supposed management of the treatment that one condition they all professed was their only and primary concern was described as "Poorly Controlled" in large type on ER notes, with a suggestion by the ER doctor to have the then primary care doctor refer to him in their failure to treat the 'condition' (I'd call it a symptom) after months of following their prescribed treatments therefore a standing and constant medical emergency to which the plaintiff had been denied treatment from listed defendants, though my blood pressure fluctuates between high and extremely high and is unpredictable short of inducing hypothermia or great pain.
22. That the plaintiff seeking at much medical aid as he could, the defendants represent doctors/medical of the last year alone pursuant again by RST§479. The negligence systemic to the medical industry which had either been made or purposely misdirected medical personnel from knowing and understanding those conditions and necessary medical information surrounding the BP Oil mechanizations, thereby a conspiracy against constitutional, civil and patients' rights directly contributing to a continued medical neglect (RST§323 services to another which he should recognize as necessary for the protection of the other's person) being that the plaintiff hasn't once been treated for chronic infection/carditis nor heavy metals including massively overdosed manganese and arsenic poisoning by AMA directed peoples nor professionals, which by the plaintiff has survived by much personal effort and enterprise. Plaintiff asked to be awarded **$15,000 (Fifteen Thousand Dollars) by each** of these defendants pursuant **RST§878 concurrent and consecutive acts** by order of the court.
23. Defendants refused adequate and necessary medical care, diagnoses and treatments in negligence medical malpractice to include outrageous conduct in refusing to even to consider causes or research of medical ailments, further lying to the plaintiff, patient at the time, about conditions and diagnoses and possible causes then not only that of neglect RTT§4: but into

more serious aspects of malpractice to continue a condition without concern to the patients only to continue to press patients to be "easy" to accept negligence while pushing pills upon them without care or acknowledgement that the causal condition untreated caused further harm to plaintiff pursuant RST§323. Such systemic negligence becomes reckless especially over a period of weeks, months much less years when a continuing illness causes further physical damage causes emotional distress whereby all the defendants were in deliberate disregard for potential distress by RST§46 by which punitive damage may apply to any of the listed defendants.

24. Monies asked for this plaintiff total of $1,136,000 (One Million One Hundred and Thirty-Six Thousand Dollars): Given that due to the several years of neglect and civil rights, constitutional rights and patient rights violations based on this action, the plaintiff will have to require not only long medical care but several specialists such as monitoring of the many possible long-term effects of manganese, arsenic and other poisonings, but that of relocating to a very hot climate far from family or friends and support networks on which he has become to depend during such a long illness to cope with the genetic transformation/gmo carditis, heavy metal poisonings or yet unforeseen medical condition causing such which now required temperatures thought extreme by the norm, or constant uninterrupted high temperatures or hypothermia and simultaneously extremely high blood pressures and heart rates occur, daily life consists of dealing with these conditions.

25. Almost the entire of plaintiff's non-employed, now disabled, income for the last 6 years of physical agony has been spent in desperate measures to care for himself in the absence of necessary medical care. Also, to mention yet to be performed dental work to allow effective chelation and avoiding of BPAs as hormonal imbalances have already occurred and noted since original filing of compliant, then exorbitant use of utilities for heating, vitamin supplements, chelation compounds, and oral antibiotics from foreign markets, and having to build saunas to maintain my life in emergency situations, etc to include that of any and all costs to my support network on my behalf, fairly unable to leave the house for any length of time during cold temperatures. Such monies are not only simple compensation and restitution, but needed to acquire properties of residence in hotter climates which have a much higher cost of living than he's presently abiding it. Such is a minimum of added costs upon the plaintiff which would be avoided if prompt medical care had been forthcoming.

26. Stress has been so great that I the plaintiff am dependent on emotional support animals and early during the onset dependent my father who also has Arsenic poisoning, my father who can often no longer stand on his own, having one would suppose, exposed while staying on one of my sailboats some months after my exposure. Myself, for two years I could barely rise from my bed. May there be any punitive damages from the defendants, such will probably need needed and used by the plaintiff, which I now ask that defendants be made to pay to the plaintiff such restitution. Manganese Overdoes symptoms could well match the conditions required of that of mental anguish though chemically induced, and even hypertension on such levels as reported as fatal in exposure from industrial circumstances.

27. This Plaintiff is cognizant my demands of financial restitution is far lower than those recommended by the statutes and codes of either 'patient dumping' of JASTA, but will accept further punitive restitution if so found, hopefully then such defendants will be compelled to medically treat innumerable other victims of similar circumstance and wrong doing as addressed by JASTA and otherwise could only be compared to weapons of mass destruction which above and beyond any oil spill which will now be made infectious followed by heavy metal toxins.

28. We should require the proactive banning of all genetic modifications given the staggeringly heinous foresight or lack of foresight of those who would manipulate such as either beyond their comprehension or bearing some incredible malice, even if they themselves could tell the difference as to which, especially that now any such modification made on any organism becomes contagious by the vector of these microbes capable of GME transference which have been introduced worldwide by the defendants if *such injunctive reliefs against all artificial manipulation of any genome by craft not only of the listed defendants, but worldwide is what is truly required.* By those circumstances results could never be better than that of natural design and will be strewn across irrelevant of species or context, in fact by this ANY

manmade genetic modifications demonstrabable many times and heinously worse that would ever naturally occur could be spread world-wide no matter what the intentions of is a clear and present threat and can only be considered an act of war or constituting use of a weapon of mass destruction and guarded against as such, if such enforcement can be compelled.

29. The court may empanel a jury for this pro se plaintiff.
30. WHEREFORE, plaintiff asks to have this and that other, further and general relief to which he may show himself entitled as plaintiff in tort action against each and every defendant RST§46 due to the defendants egregious improprieties of the court for justice and to uphold and maintain his rights, also to order reparations for his loss in compensation for bodily injury, personal injury, mental and physical suffering, together with the cost of this action by and protect same adoption of standards against invaders by RST§286, jurisdiction by USC 50Chp3§23 and by each and every law applicable.
31. and as the courts may, that the courts ensure peoples safety here and worldwide of which this plaintiff is a member in this public venue in express and implied contracts in examining the imperatives of USC 50:32§1522 (conduct of chemical and biological defense program) with any punitive, regulation, seizures and injunctions against causal defendants and any genomic manipulations which now can be shown as cross-species contagious and damaging to safety.
32. Further that the courts find that USC 50:32§1522 supersedes and takes precedence over 42 USC 1395 if in true service to these people and constituents of the population.

This plaintiff incorporates with this document my previous Memorandum of Law supporting Complaint and other documents such as this Plaintiffs reply showing that heavy metal within my system are undiminished, despite each and every one of the medical providers listed as defendants wrongly stating they would be diminished, or dissipate or naturally purged in strange conspiracy ['sharing the same breath'] being commonly known that such feared heavy metals accumulate without medical intervention, and other documents as I have filed as may be appropriate as well as any laws in my benefit. Having amended complaint for factual content of import, this plaintiff asks permission to further amend to add such defendants as this document and motions so far filed indicate, or are yet proposed by the defendants as co-defendants.

*Shane Maddox Bruce*

Plaintiff: in propria persona
Shane Maddox Bruce
313 W. Prospect St.
LaFollette, TN 37766
(321)328-8680
GoldenSage@Live.Com

*Certificate of Service*
I hereby certify that on or by the 6st of October 2017, a true and exact copy of the Above Document in Civil Action No: 3:17-CV-285 has been sent by First Class Mail to 6 (Six) parties indicated:

Clerk of Court
United States District Court
Knoxville Division
800 Market Street, Suite 130
Knoxville TN, 37902

Robert Scott Durham
London & Amburn P.C.
607 Market Street, Suite 900

Knoxville, TN 37901

Edward G. White, III
Joshua J. Bond
Hodges, Doughty & Carson, PLLC
617 West Main Street
P.O. Box 869
Knoxville, TN 37901-0869

Stephen C. Daves
O'Neil, Parker & Williamson
7610 Gleason Drive, Suite 200
Knoxville, TN 37919

Clarence J Gideon
Justin Blake Carter
Gideon, Cooper & Essary, PLC

315 Deaderick Street, Suite 1100
Nashville, TN 37238

Sneed, Robinson & Forsythe
Cornelius & Collins, LLP
1500 Nashville City Center
511 Union Street
Nashville, TN 37219



Shane Maddox Bruce
313 W. Prospect St
LaFollette, TN 37766

Clerk of Court
United States District Court
800 Market Street, Suite 130
Knoxville, TN 37902

RECEIVED
OCT 10 2017
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville