UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| SHANE BRUCE, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 3:17-cv-285 |
| v. ) | |
| ) | Judge Mattice |
| GREAT BRITAIN, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

## **ORDER**

Shane Bruce ("Bruce") filed this action alleging the 2010 Deepwater Horizon explosion and subsequent oil leak "affected" him. According to him, that incident did not result from negligence or recklessness. Bruce claims, rather, that the Deepwater Horizon incident was a deliberate attack, orchestrated as part of an international conspiracy. This alleged conspiracy involved numerous conspirators, including, but not limited to: some local Tennessee healthcare providers, national medical associations—such as the American Medical Association (AMA) and the American Association of Poison Control Centers (AAPCC)—and even the highest levels of the American and British governments, including Her Majesty Queen Elizabeth II and United States Secretary of Defense, James "Mad Dog" Mattis.[1] Although details are sparse, Bruce further concludes that "genetically modified bacteria" released during the Deepwater Horizon incident caused him to suffer from arsenic poising and undergo "an unwilling

---

[1] Bruce's proffered conspiracy also involved BP p.l.c. ("BP"), which leased and operated the Deepwater Horizon oil platform in 2010. Bruce's Complaint named BP as a defendant, of course. [Doc. 1]. In February of this year, however, the United States Judicial Panel on Multidistrict Litigation severed and transferred Bruce's claims against BP to the Eastern District of Louisiana for litigation in Multidistrict Ligation No. 2179, which regards claims against BP that are related to the Deepwater Horizon incident. [Doc. 98].

genetic transformation," which is something he discovered sometime last year—seven years after the Deepwater Horizon incident. Bruce, acting *pro se*, brought a slew of federal claims, ranging from the Anti-Terrorism Act (18 U.S.C. § 2333) to maritime law, state tort law claims, and even a claim pursuant to the English Magna Carta. As damages, he asks the Court to award him "$1,136,000," which he believes is enough to: pay "several specialists" to monitor his health indefinitely, relocate to a "very hot climate" with a "higher cost of living," build medically necessary "saunas," and maintain his "emotional support animals."

After Bruce was granted *in forma pauperis* (IFP) status last year, the United States Marshal Service trekked the nation, attempting to effectuate service on the suit's twenty-six named Defendants. Most Defendants have since appeared, although it seems Queen Elizabeth could either not be reached or bothered; in any event, she has yet to make an appearance before the Court. Many Defendants have filed motions to dismiss. [Docs. 22, 24, 26, 28, 44, 73, & 123]. All argue dismissal is warranted, but they give assorted and divergent reasons as to why. For instance, the Tennessee healthcare providers seek dismissal under Tennessee's "good faith certificate" law, which they claim Bruce has not complied with. The Office of Secretary Mattis, the Centers for Disease Control (CDC), and the National Institute of Health (NIH) assert that qualified and sovereign immunity bar Bruce's claims, and they contend he has otherwise failed to exhaust his administrative remedies as required as to some of his federal claims (*e.g.* Federal Tort Claims Act (FTCA) and Americans with Disabilities Act (ADA) claims). [Doc. 123]. By comparison, some others, such as the AMA, argue the Court lacks jurisdiction to hear Bruce's claims because they are "attenuated, implausible, frivolous,"

and are "clearly devoid of merit." [Doc. 44 at 2 (quoting *Hagans v. Lavine*, 415 U.S. 528, 536—37 (1974)].

After careful consideration, the Court agrees this suit should be dismissed, but instead of judging the veracity of Bruce's complaint or venturing piecemeal into the myriad of complicated legal topics presented by Defendants, the Court finds dismissal is due because Bruce has failed to plead a claim capable of relief. *See* 28 U.S.C. § 1915(e)(2)(B) (explaining "the court shall dismiss" an IFP case "*at any time*" if it is determined that the action "fails to state a claim on which relief may be granted" (emphasis added)). The Court notes Bruce has proposed an amendment to his Complaint, but that amendment does not cure the pleading defects discussed herein, making it futile. Accordingly, Bruce's Motion to Amend Complaint [Doc. 90] is **DENIED**, and all claims asserted in this lawsuit are hereby **DISMISSED WITH PREJUDICE.**

## I.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide, in relevant part, that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). While Rule 8(a) does not require plaintiffs to set forth detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At a minimum, Rule 8(a) requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" – that is, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 555 n.3 (2007). A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is thus not a challenge to the

plaintiff's factual allegations, but rather, a "test of the plaintiff's cause of action as stated in the complaint." *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *Twombly*, 550 U.S. at 570 (holding that a complaint is subject to dismissal where plaintiffs failed to "nudg[e] their claims across the line from conceivable to plausible"). Although the Court must take all of the factual allegations in the complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a plaintiff's legal conclusions couched as factual allegations need not be accepted as true. *Iqbal*, 556 U.S. at 678; *see Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Therefore, to survive a motion to dismiss under Rule 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Bruce is proceeding in this action *pro se*. The Court is mindful that *pro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys. *Bridge v. Ocwen Fed. Bank,* 681 F.3d 355, 358

(6th Cir. 2012). The Court is "not, [however,] require[d] to either guess the nature of or create a litigant's claim." *See, e.g.*, *Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases, including the pleading standards set forth in Fed. R. Civ. P. 8(a). *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *Whitson v. Union Boiler Co.*, 47 F. App'x 757, 759 (6th Cir. 2002); *Kafele v. Lerner, Sampson, Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005) ("[P]*ro se* litigants are not relieved of the duty to develop claims with an appropriate degree of specificity."). Thus, although the standard of review for *pro se* litigants is liberal, it does require more than the bare assertion of conclusions. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

## II. ANALYSIS

As an initial matter, some Defendants have questioned the Court's jurisdiction to hear Bruce's claims. Federal courts, which are courts of limited jurisdiction, are obliged to first resolve jurisdiction challenges before reaching a claim's merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–97 (1998). Otherwise a merit based ruling would, in essence, be an impermissible advisory opinion if issued without jurisdiction. *See id.* at 101.

### A. Jurisdiction

There are two primary jurisdictional issues raised by Defendants. First, some Defendants invoke the substantiality doctrine and assert Bruce's claims are "attenuated, implausible, frivolous," and are "clearly devoid of merit." [Docs. 44 at 2 & 74 at 1 (both quoting *Hagans v. Lavine*, 415 U.S. 528, 536—37 (1974)]. This is in reference to the

5

arguably fantastic nature of Bruce's assertions. [*See id.*]. Those arguments are misplaced, however. The Supreme Court has "made it clear," at this stage, "a court *must* take [a complaint's] allegations as true, no matter how skeptical the court may be." *Iqbal*, 556 U.S. at 696 (emphasis added); *Twombly*, 550 U.S. at 556 (holding all well-pled allegations are presumed true "even if doubtful in fact"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."). "The *sole exception* to this rule" applies to allegations that are so "sufficiently fantastic" they defy consensus reality: "claims about little green men, or the plaintiff's recent trip to Pluto, or experience in time travel." *Id.* (emphasis added). Although Bruce's claims border on the supernatural, they are not "sufficiently fantastic" or reach the level of empirical absurdity. Consistent with this, the Court takes any well pled facts as true for the purposes of this review.

The substantiality doctrine is otherwise inapplicable here. That jurisdictional doctrine applies to claims that, when taken as true, do not accord with explicitly established, black-letter law. *See, e.g.*, *Sims v. Waln*, 536 F.2d 686, 689 (6th Cir. 1976) (holding claims were not insubstantial when there were no "previous decisions [that] inescapably render[ed] the claims frivolous." (quoting *Hagans*, 415 U.S. at 537)); *see also Carter v. Homeward Residential, Inc.*, 794 F.3d 806, 807 (7th Cir. 2015) (holding plaintiff's § 1983 claims asserted against non-state actors were frivolous). In other words, the doctrine applies to a complaint that "pleads itself out of court." *Carter*, 794 F.3d at 809. Under those circumstances, courts are invited to dismiss claims *sua sponte* on jurisdictional grounds, because it is unnecessary for a defendant to waste time and resources responding. *See Carter*, 794 F.3d at 807. The doctrine does not, as Defendants seem to believe, invite the Court to weigh the veracity of a claim's facts. Instead, the

doctrine places judges on surer footing and permits them to merely assess a claim's legal sufficiency. For reasons that will be explained, the Court cannot even do that here because Bruce has not sufficiently pled enough facts to make that determination. Without more, the Court cannot assess whether Bruce's claims are legally frivolous even assuming his facts true. Accordingly, the Court finds the substantiality doctrine does not deprive the Court of its jurisdiction.

The next jurisdictional argument Defendants proffer regards the Court's statutory jurisdiction to entertain some of Bruce's federal claims. Secretary Mattis, the CDC, and the NIH, for instance, assert that the FTCA, maritime law, and various other federal claims are unsupported by jurisdiction because Bruce has failed to exhaust various administrative remedies, and they claim Bruce has otherwise failed to overcome their sovereign immunity, which they assert is a jurisdictional bar. [*See* Doc. 124]. While all of this might be true, to make those arguments and reach those conclusions, the government Defendants infer facts from Bruce's scant complaint. But Bruce has not sufficiently pled enough relevant facts to tell one way or the other. In these circumstances, instead of untangling the Gordian knot, asking Bruce to clarify by amending his pleadings, opining on sovereign immunity without proper competing briefings, or merely assuming he has not complied with the various administrative requirements, judicial economy is furthered by bypassing the issues all together and straightforwardly assessing the merits of Bruce's suit by determining whether he has pled a claim capable of relief. *See Khodr v. Holder*, 531 F. App'x 660, 665 n.4 (6th Cir. 2013) (joining the overwhelming majority of circuits in holding that courts can presume "*statutory* jurisdiction—as distinct from *constitutional* jurisdiction—exists in order to

resolve a case, by means of a straightforward merits analysis," if resolution is in favor of the party contesting jurisdiction).

### B. Failure to State a Claim

Bruce has not pled a claim capable of relief. Many facts Bruce alleges in his Complaint are not entitled to an assumption of truth. "To be clear," the Court does "not reject [Bruce's] bald allegations on the ground that they are unrealistic or nonsensical." *Iqbal*, 556 U.S. at 681. Rather, "[i]t is the conclusory nature of [Bruce's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.* When determining whether Bruce has pled sufficient factual allegations to make out a claim capable of relief, the Court starts "by identifying the allegations in the complaint that *are not* entitled to the assumption of truth." *Id.* at 680 (emphasis added). Because of their conclusory nature, the following assertions in Bruce's Complaint are not entitled to the presumption of truth, that:

- Great Britain conspired, through "implied and express contracts," with BP to purposefully cause the Deepwater Horizon incident as an attack on the United States [Doc. 1 at ¶ 2];
- Sir John Sawyers, as a spy for the United Kingdom and member of BP's board of directors, coordinated an attack on the United States. [*Id.* at ¶ 3];
- The United States and the Secretary of Defense conspired with the United Kingdom to conduct an attack on the American people;[2] or
- The AMA, CDC, and AAPCC "betray[ed] the nation and peoples" by being controlled by "foreign intrigues," or otherwise conspired to disseminate false information. [*Id.* at ¶ 6].

These allegations lack relevant factual enhancements, and as such, they are insufficiently pled. The Court does not accept them as true. Take for instance Bruce's allegations of a conspiracy between Great Britain and BP. When a plaintiff alleges a

---

[2] In his response to the governmental Defendants' motion to dismiss, Bruce even admits his conspiracy allegations against them are nothing more than his bare conclusion. [Doc. 126 at 5 ("Collusion and Conspiracy is a *foregone conclusion* giving [sic] the failure of the political structure..." (emphasis added))].

conspiracy, he must provide enough factual information from which to infer an agreement; bald conclusions are insufficient. *Twombly*, 550 U.S. at 557. The plaintiff must provide "specific allegations," such as "identifying a written agreement or even a basis for inferring a tacit agreement." *Id.* (parenthetically quoting *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (2007)). Bruce has not done so here.

Bruce has also failed to state a claim against the healthcare provider Defendants. Bruce alleges medical malpractice (which Defendants assert are barred due to Bruce's failure to comply with Tennessee's "good faith certificate" law), but Bruce also cites the federal patient anti-dumping statute, the Emergency Medical Treatment and Active Labor Act (EMTALA), in his Complaint, assumingly in reference to these Defendants' conduct. It is unlikely Tennessee's "good faith" statute would defeat a claim pled under that federal statute. Whatever the case may be, Bruce claims, in sum, that the healthcare Defendants refused to treat him. [*See* Doc. 1 at ¶ 7]. Yet, Bruce fails to state in his Complaint an essential predicate for a malpractice claim; that is, he does not state he and the seventeen odd healthcare providers named in this suit had, at relevant times, a patient-physician relationship. Without such a relationship, Defendants were not obliged to treat Bruce, and without that duty, they cannot face malpractice liability under Tennessee law for refusing to do so. *See Kelley v. Middle Tennessee Emergency Physicians, P.C.*, 133 S.W.3d 587, 592 (Tenn. 2004).

To the extent Bruce asserts EMTALA claims against individual doctors, those claims are summarily dismissed. The EMTALA does not provide a cause of action against individuals, only hospitals that participate in Medicare and have an "emergency department." *Moses v. Providence Hosp. and Med. Ctr., Inc.*, 561 F.3d 573, 579, 587 (6th Cir. 2009). With respect to the remaining Defendants who may fall within the

9

EMTALA's coverage, the claims against them are likewise due to be dismissed. There are two ways to proceed with an EMTALA claim. To demonstrate how Bruce has failed to plead either, the Court will examine both in the context of his Complaint.

First, a plaintiff can assert a "stabilization claim," which permits a person damages if an emergency department discharges or transfers him without first providing stabilizing care. *Perry v. Owensboro Health, Inc.*, 2015 WL 4450900, at *3 (W.D. Ky. July 20, 2015). To make such a claim, a plaintiff must show he had a life-threatening, emergency condition at the time, and that the defendant hospital had *actual knowledge* of said condition. *Id.* But to be sure, the EMTALA is not a negligence statute. For example, misdiagnosing a patient's emergency condition for a less severe, non-life-threatening condition precludes actual knowledge, and that in fact would defeat a stabilization claim. *Id.* at *6 ("EMTALA 'does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware.'" (quoting *Barber v. Hosp. Corp. of Am.*, 977 F.2d 872, 883 (4th Cir. 1992))). Bruce asserts the healthcare Defendants, despite his requests, refused to sample "cultures of specific bacteria," presumably from his bodily fluids. Whatever the results Bruce believes these test would have revealed, they were allegedly not conducted, and due to this, the healthcare Defendants cannot be said to have had actual knowledge of whatever acute, life-threatening disease Bruce's believes he was suffering from at the time. Given this, it necessarily follows that Bruce has failed to make out a stabilization claim.

The other claim one can make under the EMTALA is a "screening claim." *Id.* at *3. The EMTALA requires, in essence, that patients receive the same appropriate screening tests as other patients, regardless of their ability to pay for medical services.

*See id.* at *4. To succeed under a screening claim, then, a plaintiff must show he did not receive an apparently necessary screening due to his inability to pay. *Id.* However, Bruce has not alleged the healthcare Defendants treated him differently than other patients due to his inability to pay. Without that factual predicate, there could be an infinite number of nondiscriminatory reasons the healthcare Defendants refused to treat him. It could be the case that the healthcare Defendants did not screen or treat Bruce in the way he requested because they merely disagreed with his self-diagnosis. Or it could be they refused to treat Bruce due to his disruptive behavior at the hospital, if any, regardless of his ability to pay for medical services.

Given that so many of the healthcare Defendants allegedly refused to treat or screen Bruce, these explanations seem more likely than one based on his alleged inability to pay. Without facts one way or the other, Bruce has "not nudged his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. As such, the Court finds Bruce has not made out a claim showing he is entitled to relief under a screening theory. *See Perry*, 2015 WL 4450900 at *4*. (holding plaintiff failed to state a screening claim because he failed to alleged "disparate treatment [that was] attributable to an improper motive.").

### III. CONCLUSION

Because Bruce has failed to state a claim capable of relief, this action is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 25th day of September, 2018.

             */s/ Harry S. Mattice, Jr.*
             HARRY S. MATTICE, JR.
             UNITED STATES DISTRICT JUDGE